

John Houston Scott, SBN 72578
Lizabeth N. de Vries, SBN 227215
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, CA 94109
Tel: (415) 561-9601
Fax: (415) 561-9609
john@scottlawfirm.net
liza@scottlawfirm.net

Attorneys for Plaintiff,
SIOBHAN MCAULIFFE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIOBHAN MCAULIFFE<br><br>Plaintiff,<br><br>v.<br><br>CITY & COUNTY OF SAN FRANCISCO;<br>SAN FRANCISCO POLICE DEPARTMENT;<br>and, DOES 1-20, inclusive<br><br>Defendants. | Case No.: CV12 0071<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(42 U.S.C. §1983; Pendent State Claims under Cal. Gov't Code § 12940)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, SIOBHAN MCAULIFFE, alleges as follows:

## JURISDICTION

1. This action arises under 42 U.S.C. §1983. Pendent state claims arise under the Fair Employment and Housing Act, California Government Code § 12940(h). Jurisdiction is conferred by virtue of 28 U.S.C. §§ 1331 and 1343.

2. The conduct alleged herein occurred in the City and County of San Francisco. Venue of this action lies in the United States District Court for the Northern District of California under 28 U.S.C. §1391 (b)(2).

## PARTIES

3. Plaintiff SIOBHAN MCAULIFFE (hereafter "McAuliffe" or "Plaintiff") is a woman who, at all times mentioned, was an employee of San Francisco Police Department ("S.F.P.D.").

4. Defendant CITY & COUNTY OF SAN FRANCISCO (hereafter "the City") is a municipal corporation.

- 1 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

5. Defendant SAN FRANCISCO POLICE DEPARTMENT (hereafter "S.F.P.D.") is a department of the City and County of San Francisco, a municipal corporation.

6. In doing the acts or omissions complained of Defendants, their agents and employees, acted or failed to act under color of law and in concert and/or with the authorization and knowledge of each other.

7. Plaintiff is ignorant of the true names and capacities, whether individual, corporate or otherwise of DOES 1 through 20 herein, and prays for leave of Court to insert the true names and capacities of such Defendants when they become known or ascertained together with appropriate charging allegations.

## STATEMENT OF FACTS

8. From January 1986 to the present, plaintiff was employed as a police officer for the San Francisco Police Department ("S.F.P.D."). In 1997 plaintiff was promoted to Sergeant.

9. In 2003, plaintiff was diagnosed with a pituitary adenoma. This tumor affected her speech. In 2005, she discovered damage to her vocal cord and underwent speech therapy.

10. During 2007, plaintiff was out on a medical leave of absence for treatment of internal injuries which required gallbladder and pancreatic surgery. During her medical leave of absence in 2007-2008 the plaintiff was being paid through the Catastrophic Illness Program in which city employees donated sick leave and vacation time to other employees. This was common knowledge to most employees of the Police Department. This information appeared in monthly Department Bulletins and in the POA Monthly Journal. In 2008 plaintiff returned to work. Due to her medical condition, her voice and speech were affected. On occasion she had slurred speech and a raspy and coarse voice.

11. On February 6, 2010, plaintiff was assigned to the Park Station. Plaintiff was treated differently than other Sergeants. She was segregated and ostracized by male Sergeants. She was not assigned officers to supervise and evaluate. She functioned as a patrol officer. She was prohibited from using the computer at the Sergeant's desk in order to perform the duties and responsibilities of a Sergeant.

12. On February 27, 2010, Captain Steve Tittle and Acting Lt. Darby Reid ordered plaintiff to respond in her patrol vehicle to meet them at the "Golden Gate Corpyard." When plaintiff arrived she was ordered to submit to a drug test. This unlawful order was in violation of the Peace Officer Bill of Rights, Department General Orders and the MOU. Plaintiff passed the test. Soon after, Lt. Reid ordered plaintiff to address officers at two lineups to explain her medical condition and related disability. This was humiliating and embarrassing to the plaintiff.

13. On April 30, 2010, plaintiff was on duty at Park Station. She attempted to drive a Sergeant's patrol vehicle from Park Station to the scene of the incident. Plaintiff could not operate the vehicle because the seat was bolted in place. This was done to harass the plaintiff.

14. On May 6, 2010, plaintiff responded to back up an officer at a felony-traffic stop. While exiting the patrol car she injured her back. On May 15, 2010 plaintiff saw a doctor and was placed on medical leave for her back injury.

15. On May 18, 2010, plaintiff was ordered by Lt. Ramlan to appear at Park Station. At that time she was served with a subpoena to appear as a victim witness at a disciplinary hearing, told to sign papers regarding a medical/disability leave and ordered to contact Dr. Elizabeth Murphy, the Department Physician. The plaintiff called Dr. Murphy and left a message. Plaintiff was not informed that command staff at Park Station had sent memoranda to Dr. Murphy requesting that the plaintiff be evaluated based on rumors of suspected drug use. These rumors were the result of bias and discrimination due to plaintiff's medical condition, related disability and gender.

16. On June 8, 2010, the workers' compensation claims adjuster assigned to plaintiff's claim told plaintiff her claim was accepted and she would receive disability benefits.

17. On the morning of June 9, 2010, Commander Kitt Crenshaw appeared at plaintiff's home in El Sobrante, California without notice and without a warrant. He told plaintiff that he was ordered to disarm her and showed plaintiff disarming papers. Plaintiff questioned the papers because they were not signed by the Chief of Police. Crenshaw told the plaintiff that the disarm order was related to fitness for duty and Dr. Murphy. Plaintiff authorized Crenshaw to search her locker for the weapon but did not allow him into her home.

18. Numerous undercover officers surrounded plaintiff's home while a search warrant was being obtained. Later that day plaintiff's husband, officer Jesse Myrick, arrived home and gave plaintiff's duty weapon to an officer outside their home. Plaintiff's husband, a 33 year veteran of the Department, felt betrayed and humiliated. He then retired from the S.F.P.D. because of the June 9th incident.

19. Later on June 9, 2010, the workers compensation claims adjustor called the plaintiff and informed her that due to administrative issues her claim was now rejected and she would not receive disability benefits, i.e., a paycheck and medical benefits.

20. On June 14, 2010, an investigator arrived at plaintiff's home and interviewed her for several hours under the pretext of investigating her worker's compensation claim.

21. On June 17, 2010, plaintiff attended a meeting with Dr. Elizabeth Murphy and her union representative Steve Johnson. At that time plaintiff learned that Dr. Murphy did not authorize the June 9th decisions to disarm her nor cause her worker's compensation claim to be denied. Plaintiff was informed that it would be in violation of policies and practices for the Police Department to administratively interfere with the worker's compensation process. Plaintiff was also informed that it would be in violation of the law to require the plaintiff to submit to a fitness for duty evaluation or chemical test while on medical/disability leave.   In addition, plaintiff was informed that Dr. Murphy did not believe the memos from Park Station regarding the plaintiff were credible. Dr. Murphy stated that the side effects of the drug prescribed the plaintiff for her thyroid disease would make her more alert, not lethargic or drowsy.  Plaintiff was encouraged to retain an attorney to protect her legal rights. Plaintiff volunteered to submit to a urine test which she passed.

22. On August 25, 2010, Jesse Myrick committed suicide. This caused additional economic hardship for the plaintiff.  She went from being in a household with two breadwinners employed by the S.F.P.D. to a household receiving no income as a result of the events of June 9th.

23. On January 25, 2011, the plaintiff was notified that she would be interviewed as part of an Internal Affairs investigation regarding her alleged failure to obey a direct order when confronted by Commander Crenshaw at her home on June 9, 2010. This investigation was

- 4 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

discriminatory and result oriented. It served the purpose of deflecting attention from the fact that the S.F.P.D. acted contrary to policy and practice on June 9, 2010 when the decisions were made to (1) disarm the plaintiff and (2) deny her the benefits she was entitled to receive as an employee with an industrial/work related injury.

24. This investigation, and related charges, further gave the S.F.P.D. the discretion to further punish the plaintiff by not rearming her and not returning her to a fully duty position when she was cleared to return to work in March 2011. This further ratified and condoned the violations of plaintiff's rights and discriminatory treatment of June 9, 2010. This was also done to further stigmatize the plaintiff and damager her career including, but not limited to, future assignments, reputation, and promotional opportunities.

25. Plaintiff complained to the Department of Fair Employment and Housing (DFEH) on February 24, 2011. The DFEH issued plaintiff a right-to-sue letter on March 4, 2011.

26. In March 2011, plaintiff was evaluated by a doctor chosen by the defendants and released to return to work full duty. Plaintiff returned to work in March 2011 and was assigned to the Rebooking Unit in the District Attorney's office. Plaintiff's workspace was a chair located between a desk and a file cabinet. She had no desk, no telephone and no computer. Plaintiff was shunned by her co-workers and command staff.

27. On May 12, 2011, the defendants served plaintiff with a notice of intent to impose a 10 day suspension for misconduct related to her interaction with Commander Kit Crenshaw on June 9, 2010. On May 15, 2011 the plaintiff submitted to the Chief's Office a request for a hearing to contest the proposed discipline. The plaintiff was never given a hearing. Rather, she was suspended for 10 days without a hearing. The suspension went into effect on or about June 1, 2011.

28. On or about July 12, 2011, plaintiff was informed that she was being transferred to Narcotics. While on route to this new assignment, plaintiff was told that she was being assigned, effective immediately, to Investigations. The Investigations office was empty. Plaintiff had no job assignment for nearly a week.

- 5 -
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

29. On or about July 18, 2011, plaintiff was transferred to the Missing Persons Unit. Plaintiff went to her locker and discovered it had been emptied, her belongings were gone, and her name was removed.

30. This nightmare that began in February 2010 at Park Station and followed the plaintiff to her home on June 9, 2010 is not over. The plaintiff continues to be ostracized and shunned by her co-workers. Instead of being accommodated for her medical condition and related disability, the plaintiff has been denied benefits, disciplined, ostracized, and stigmatized.

## DAMAGES

31. As a further result of the acts and omissions of the defendants, the plaintiff has sustained and will continue to sustain substantial losses of earnings and benefits. In addition, plaintiff has suffered and will continue to suffer damage to her career and reputation in an amount to be determined according to proof.

32. As a further result of the acts and omissions alleged herein, plaintiff has suffered, and will continue to suffer humiliation, shame, embarrassment, anxiety and emotional distress in an amount to be determined by proof.

33. As a result of the acts and omissions alleged herein, plaintiff was required to retain counsel and is entitled to reasonable attorneys' fees and costs should she prevail in this action.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983: Gender Discrimination)

34. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

35. In doing the acts and omissions alleged herein Defendants City & County of San Francisco and San Francisco Police Department, and DOES 1-50, and each of them, acted under color of law to deprive the plaintiff of her rights under the United States Constitution including but not limited to her right to equal protection guaranteed by the Fourteenth Amendment.

36. The plaintiff's gender was a motivating factor for the defendants' decision to deny benefits, disarm, suspend and otherwise materially alter the terms and conditions of the plaintiff's employment.

37. The alleged discrimination was authorized and ratified by final decision makers for the City and County of San Francisco and SFPD.

38. As a result of defendants' acts and omissions the plaintiff was injured and continues to be injured and damaged as alleged herein.

39. WHEREFORE, Plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION
### (Fair Employment & Housing Act, Gov't Code §§ 12940, *et seq.*)

40. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

41. Plaintiff's gender, medical condition and/or disability was a motivating reason for the conduct alleged herein.

42. Defendants' conduct was a substantial factor in causing the plaintiff's harm.

43. WHEREFORE, plaintiff prays for relief as set forth herein.

## JURY DEMAND

44. Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

The Plaintiff prays for relief as follows:

1. For general and compensatory damages and economic damages according to proof;
2. For appropriate injunctive relief;
3. For an award of attorney's fees and costs as permitted by law; and
4. For such other and further relief as the Court may deem necessary and appropriate.

DATED: January 5, 2012

SCOTT LAW FIRM

By: _____
JOHN HOUSTON SCOTT
Attorney for Plaintiff

- 7 -

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF